1   Paul Hoffman, SBN 071244
    SCHONBRUN SEPLOW
2   HARRIS & HOFFMAN LLP
    200 Pier Avenue #226
3   Hermosa Beach, California 90254
    Telephone:  (310) 396-0731
4   Fax:  (310) 399-7040

5   Catherine Sweetser, SBN 271142
    SCHONBRUN SEPLOW
6   HARRIS & HOFFMAN LLP
    11543 West Olympic Blvd.
7   Los Angeles, California 90064
    Telephone:  (310) 396-0731
8   Fax:  (310) 399-7040

9   Attorneys for Plaintiff
    Marina Borawick

10

11

12                **UNITED STATES DISTRICT COURT**
                  **CENTRAL DISTRICT OF CALIFORNIA**
13

14  Marina Borawick, an individual          )   Case No.
                                            )
15                        Plaintiff         )
                                            )   **COMPLAINT FOR DAMAGES**
16            v.                            )
                                            )
17  CITY OF LOS ANGELES, a public           )   1. **Violation of Fourth and**
    entity, OFFICER CORREA, and DOES        )      **Fourteenth Amendments, 42**
18  1-10,                                   )      **U.S.C. § 1983**
                                            )   2. **Violation of the First**
19                        Defendants.       )      **Amendment**
                                            )   3. **Violation of Americans With**
20  _____        )      **Disabilities Act**
                                            )   4. **Violation of Civil Rights Under**
21                                          )      **Civil Code §52.1**
                                            )   5. **Assault**
22                                          )   6. **Battery**
                                                7. **Negligence**
23                                              8. **Negligent Hiring/Employment**

24

25                                              **DEMAND FOR JURY TRIAL**

26

27

28

Marina Borawick ("Plaintiff" or "Ms. Borawick") hereby makes the following allegations in support of this complaint:

**INTRODUCTION**

1.      This case is about excessive force used against Ms. Borawick by LAPD officers when she was arrested following a stop for a broken taillight.  Ms. Borawick at the time was suffering from a frozen shoulder and had several previous arterial bypasses.  She explained her physical condition to the officers before they touched her.  Nonetheless, the officers failed to accommodate her medical conditions, handcuffed her behind her back and caused her extreme pain as well as a blockage of her axillary-axillary bypass (located across her upper chest) due to the stretching and bending of the bypass.  As a result of Defendants' actions Plaintiff suffered  physical injuries and severe emotional distress.  Plaintiff continues to suffer injuries directly attributable to Defendants' unconstitutional and unlawful actions.   This case seeks to hold the LAPD officers and the City of Los Angeles accountable for their unconstitutional and wrongful actions.


**JURISDICTION AND VENUE**

2.      This case arises under 42 U.S.C. § 1983.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.   This Court has subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (e) in that (1) the unlawful actions challenged herein occurred in the Central District; and (2) all of the parties reside in the Central District.

**PARTIES**

4.      Plaintiff Marina Borawick brings this action individually. Ms. Borawick was a resident of the City of Los Angeles at all times during the events

1  alleged in this complaint.    Ms. Borawick is a successful lawyer who has resided
2  in Los Angeles for many years.

3        5.    Defendant City of Los Angeles ("City") is a municipality duly
4  organized under the laws of the State of California.  At all relevant times, the Los
5  Angeles Police Department ("LAPD") was a branch or agency of City.  The LAPD
6  officers involved in unlawful acts alleged herein were all LAPD officers acting
7  within the course and scope of their duties. The City is responsible for Plaintiff's
8  injuries under 42 U.S.C. § 1983 because its policies and customs caused Plaintiff's
9  injuries.   The City is also responsible for the actions of its employees for
10 violations of California law under Government Code § 815.1 based on  respondeat
11 superior.

12       6.    Officer CORREA is an LAPD officer working out of the Pacific
13 Division.  He is one of the officers who was present at the time of the traffic stop
14 and whom Ms. Borawick informed about her medical conditions.  At all times
15 herein mentioned, Defendant CORREA was an employee of the Los Angeles
16 Police Department and the City of Los Angeles, and was at all times relevant to
17 this action acting in the course and scope of his employment.

18       7.    Plaintiff is informed and believes and thereon alleges that, at all
19 relevant times, Defendants  DOES 1-10 were employees or officials of City, a
20 municipality of the State of California and were California police officers. Plaintiff
21 is ignorant of the true identities and capacities of Defendants DOES 1-10 and for
22 that reason sues those defendants by such fictitious names.  Plaintiff is informed
23 and believes and thereon alleges that each of the fictitiously named Defendants is
24 in some manner and to some extent liable for the injuries alleged in this
25 Complaint.  Plaintiff will seek leave to amend this Complaint to allege the true
26 identities and capacities of these fictitiously named Defendants when they are
27 ascertained.

28

8. Plaintiff is informed and believes and thereon alleges that each Defendant is, and at all times mentioned was, the agent, employee, representative, successor and/or assignee of each other Defendant. Each Defendant, in doing the acts, or omissions as alleged in this Complaint, was acting within the scope of his or her actual or apparent authority or the alleged acts and omissions of each defendant as agent subsequently were ratified and adopted by each other defendant as principal. The defendant officers, including those involved in the obstruction of justice, were engaged in a conspiracy to violate Plaintiff's constitutional rights and were acting as co-conspirators with this aim in mind.

9. All Defendants, at all times relevant to the allegations herein, acted under the color of state law and are sued in both their individual and official capacities.

10. In committing the acts alleged in this complaint, the individual Defendants acted knowingly, maliciously and with reckless or callous disregard for Ms. Borawick's constitutional and other rights justifying an award of punitive damages under federal and California law against each individual Defendant.

## STATEMENT OF FACTS

11. At approximately 7:30 PM on April 21, 2016, Plaintiff Marina Borawick was driving west on either Washington or Venice Boulevard on her way to obtain treatment for a medical condition when an officer pulled her over. The officer informed her that she had been stopped because one of her taillights was out.

12. In April 2016 Ms. Borawick suffered from an extremely painful condition called frozen shoulder. Ms. Borawick immediately informed the officer that she was on the way to a medical appointment to obtain medical treatment for her shoulder and that the clinic would not treat her if she was too late for the appointment. She asked him if he would let her continue on her way as she had already made arrangements to fix the taillight the next day.

13. The officer refused to let Ms. Borawick leave and asked her if she had been drinking. She told him she was drinking water. The officer then told her that she had an attitude problem and was under arrest.

14. The officer ordered Ms. Borawick out of her car. Ms. Borawick asked what she was going to be arrested for and the officer said that she was being arrested for a hit and run. Ms. Borawick told the officer that it was a mistake and that she had never committed a hit and run. She explained that she was an attorney and a member in good standing of the bar for over 30 years with no criminal record. She asked if he could set a court date for the warrant and let her go.

15. At that point, another LAPD vehicle pulled up behind Ms. Borawick. Four officers surrounded her. Ms. Borawick informed all of the officers present that her shoulder could not be moved because she suffered from a painful medical condition called "frozen shoulder" and had severely restricted mobility. She asked them to look up the condition. She also told the officers that she had had three bypasses. Ms. Borawick explained that the officers could not cuff her arms behind her back because of these disabilities. She told them that they could call her doctor if they wanted to.

16. There was no reason to handcuff Ms. Borawick at all. Ms. Borawick was conversing rationally with the officers and posed no apparent threat to them. She was a fifty-nine year old disabled and unarmed woman surrounded by four male officers.

17. The officers did not attempt to pat down or search Ms. Borawick. Their failure to check if Ms. Borawick had any weapons indicates that they did not actually expect Ms. Borawick to act violently or aggressively. There was no reason to handcuff Ms. Borawick behind her back in direct contradiction of the medical information she was giving them.

18. Ms. Borawick began screaming from the pain as soon as the officers jerked her arms behind her back. Despite her screaming, crying, and praying, the officers continued with the handcuffing and left her handcuffed behind her back for an extended period of time.

19. Ms. Borawick was in fear of her life. She knew that her bypass could not be bent and that life-threatening clots could be caused by the position she was being held in. She also knew it was a possibility that the failure of the bypass could deprive her of blood to her brain or cause a stroke. Her vision immediately narrowed and became tunnel-like so that she could only see at small single point ahead of her. When she was placed in the car, she honestly thought she was going to die.

20. The pain from her frozen shoulder was searing. It was so severe that she felt she could not breathe. She thought she might faint. She told the officers again and again that the disability was making this position unbearable, but the officers ignored her complaints.

21. The officers took her wallet out of her purse and locked her purse and phone in the trunk of her car.

22. The officers then took her to jail at the Pacific Division. She was handcuffed for roughly thirty minutes. Ms. Borawick was in torturous pain and fear for her life for that entire period of time. The officers told Ms. Borawick she would have to spend the night at the Pacific Division.

23. Ms. Borawick's doctor has told her to drink water constantly for her autoimmune disorder, which is called Sjogren's Syndrome. When one opens Ms. Borawick's wallet, the first thing one sees is a "MEDICAL INFO" page in the front of her wallet that details the autoimmune disorder she suffers from and the fact that she has had multiple bypasses. Although the officers at the Pacific Division took and examined her wallet, they did not immediately remove her handcuffs and they did not give her sufficient water while she was being held in Pacific Division. Ms. Borawick was given only a small Dixie cup of water.

24.  The officers then decided she would be taken to the Santa Monica Police Department as the warrant issued from there.

25.   To transfer Ms. Borawick to Santa Monica, the officers *again* handcuffed her behind her back.  When they entered the cell to handcuff her, Ms. Borawick asked them "Why are you handcuffing me again? There's no need!" They said they would put on one extension ring to make it less painful for her. She asked if she could have two or three extension rings at least, but the officers refused to add more rings.

26. The twisting of her shoulder behind her back was still extremely painful. There was again no reason to handcuff Ms. Borawick behind her back or indeed to handcuff Ms. Borawick at all.  Ms. Borawick had at all times acted cooperatively with the officers.  Ms. Borawick was handcuffed for another thirty minutes while being transported to Santa Monica.

27.   While in the car on the way to Santa Monica, one of the officers remarked to Ms. Borawick that he had looked up the "frozen shoulder" on the internet and that he thought it was good for her to stretch her shoulder.

28.   At Santa Monica, Ms. Borawick was released from the handcuffs once the LAPD officers placed her inside a cell.  The Santa Monica Police Department officers did not attempt to handcuff her when removing her from that cell and bringing her to a booking officer.  Instead, the booking officer gave her a court date and told her she was free to leave.

29.   As the LAPD had towed Ms. Borawick's car, it was difficult for her to get home.

30.   All of the Defendants had the ability to prevent other officers from committing unconstitutional and unlawful acts causing injury to Plaintiff and failed or refused to do so.

31.   After the incident, Ms. Borawick suffered from amarosis, or narrowing of vision, in her right eye and a loss of blood pressure in her right arm, indicating

that her arterial bypass was no longer working properly.  To date, Ms. Borawick

has had one surgery related to the incident in order to clean out the clots that

formed in her axillary-axillary bypass.  That surgery did not successfully repair the

problems with the bypass.  She has also experienced a reversed bloodflow in her

carotid bypass since the incident.  At this point, Ms. Borawick is taking blood

thinners and waiting to see if she needs to undergo an even more invasive surgery

to put in a new bypass.

32.  Ms. Borawick also suffered emotional distress from the fear she was in

during the encounter that she would die or be deprived of blood to her brain, from

the torturous pain she endured, from the subsequent medical problems and the

surgeries and proceduresshe has had to undergo, and from the uncertainty of

knowing whether her health will worsen.

33.  Ms. Borawick filed a tort claim with the City of Los Angeles on August

22, 2016.  Her claim was denied on September 15, 2016.

**MONELL ALLEGATIONS**

34.   Based upon the principles set forth in *Monell v. New York City

Department of Social Services*, 436 U.S. 658 (1978), Defendant City is liable for

all injuries sustained by Plaintiff as set forth herein. Defendant City bears liability

because its policies, practices and/or customs caused Plaintiff's injuries. The

conduct alleged above resulted from the following policies, customs, or practices

of the Los Angeles Police Department:

A.  The Department had a custom, policy, or practice of handcuffing

arrestees behind their back, whether or not the arrestee posed any threat to

the officers.

B. The Department had a custom, policy, or practice of failing to train their

officers that those who could not rotate their arms behind their back should

be accommodated by handcuffing them another way.  The Department was

previously sued for failing to accommodate people who were unable to raise

their arms or rotate their arms behind their back in 2010 in the case *Harris*

8

*v. Los Angeles Police Department*, No. BC451880, but failed to alter its training or policies.

C.  The Department had a policy, custom, or practice of failing to provide adequate training and supervision to officers with respect to constitutional limits on use of force, detention, and provision of medical care;

D.  The Department failed to adequately discipline or retrain officers involved in misconduct;

E. The Department condoned and encouraged officers in the belief that they can violate the rights of persons such as Plaintiff with impunity, and that such conduct will not adversely affect officers' opportunities for promotion and other employment benefits.

35.  The Los Angeles Police Department failed to adequately train Officer Correa and Does 1-10 in assessing whether a person should be handcuffed at all as well as in assessing whether to handcuff a person in front of or behind their back.

36.  The Los Angeles Police Department also failed to adequately train Officer Correa and Does 1-10 that they should alter the method of handcuffing or remove the handcuffs if a person complained that the handcuffs were causing them great pain.

37. The Los Angeles Police Department failed to adequately train Officer Correa and Does 1-10 that they should include in their assessment of the situation statements by the person concerning medical conditions they suffered from.

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF 42 U.S.C. § 1983 FOR VIOLATIONS OF THE FOURTH**
**AND FOURTEENTH AMENDMENTS**
**OF THE UNITED STATES CONSTITUTION**
**(EXCESSIVE FORCE)**
**(AGAINST ALL DEFENDANTS)**

38.  Plaintiff hereby incorporates by reference paragraphs 1 through 24 herein, as if set forth in full.

39.  Defendants' actions  deprived Plaintiff of her rights under the Fourth

and Fourteenth Amendments to the United States Constitution. Plaintiff brings her claims for damages for the violation of these rights based on 42 U.S.C. § 1983.

40.     Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments, inter alia, by subjecting her to excessive force by handcuffing her without justification and in a way which they knew would cause her extreme pain. Defendants had absolutely no justification to use any force against Ms. Borawick. Defendants were informed that the handcuffing would cause her extreme pain and and that she had had three bypasses and proceeded nonetheless to handcuff her behind her back.

41.     The handcuffing was unnecessary. Defendants could have released Ms. Borawick on the scene with a court date. Defendants could have taken Ms. Borawick in without handcuffs, as Ms. Borawick posed no physical threat and was cooperative at all times.

42.     As a direct and legal result of the acts and omissions of Defendants, Ms. Borawick has suffered great bodily injury, fear, anxiety, torment, and emotional distress.

43.     Defendants' acts were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare and safety of Plaintiffs, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF 42 U.S.C. § 1983 FOR VIOLATIONS OF THE FIRST AND**
**FOURTEENTH AMENDMENTS**
**OF THE UNITED STATES CONSTITUTION**
**(RETALIATION)**
**(AGAINST ALL DEFENDANTS)**

44.     Plaintiff hereby incorporates by reference paragraphs 1 through 43 herein, as if set forth in full.

45.     Defendants' actions deprived plaintiffs of his rights under the First and Fourteenth Amendments to the United States Constitution. Plaintiff brings his

claims for damages for the violation of these rights based on 42 U.S.C. § 1983.

46.     Defendants acted maliciously in detaining and handcuffing Ms. Borawick in retaliation for the statements she made to the officer.  Defendants handcuffed her because they judged her to have an "attitude problem".

47.     As a direct and legal result of the acts and omissions of Defendants, Ms. Borawick has suffered fear, anxiety, torment, and emotional distress, and severe physical injuries.  She has been forced to undergo three surgeries.  Her pain and suffering on the night in question were extreme.

48.     Defendants' acts were willful, malicious, intentional, oppressive, reckless and/or were done in willful and conscious disregard of the rights, welfare and safety of Plaintiffs, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at time of trial.

### THIRD CLAIM FOR RELIEF
### DISCRMINATION ON THE BASIS OF DISABILITY
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### (AGAINST ALL DEFENDANTS)

49.   Plaintiff hereby incorporates by reference paragraphs 1 through 48 herein, as if set forth in full.

50.     Plaintiff suffers from a "disability" within the meaning and scope of 42 U.S.C. § 12102.  In particular, Ms. Borawick's disability makes it difficult for her to bend and for her body to operate its circulatory functions.  Accordingly, Ms. Borawick  is a member of the class of persons protected by 42 U.S.C. § 12132, which makes it an unlawful for a public entity to discriminate against an individual with a disability or to deny the benefits of the services, programs or activities of a public entity to a person with a disability.

51.     As alleged herein, defendant discriminated against by, among other things its failure to provide  reasonable accommodations for Plaintiff's disability.

52.     By the aforesaid acts and omissions of Defendant, Plaintiff has been

directly and legally caused to suffer actual damages including, but not limited to, medical expenses, attorneys' fees, costs of suit and other pecuniary loss not presently ascertained.

53. As a further direct and legal result of the acts and conduct of Defendant, as aforesaid, Plaintiff has been caused to and did suffer and continues to suffer severe physical injuries, sickness and emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety. The exact nature and extent of said injuries is presently unknown to plaintiff.

54. As a result of Defendants' conduct as alleged herein, Plaintiff is entitled to reasonable attorneys' fees.

## FOURTH CLAIM FOR RELIEF
## (BANE ACT, CAL. CIVIL CODE §52.1)
## (AGAINST ALL DEFENDANTS)

55. Plaintiff hereby incorporates by reference paragraphs 1 through 53 herein, as if set forth in full.

56. The acts by Defendants violate the federal and state constitutional rights of Plaintiff, as guaranteed by the Fourth and Fourteenth Amendments to the U.S. Constitution and by the California Constitution Article I, sections 1, 2, 7, and 13. Defendants used force, intimidation, coercion, and/or the threat of force, intimidation, and coercion directed toward retaliating against Plaintiff for her purported "attitude problem" in speaking to the officers. Defendants deprived Plaintiff of her right to be free from the use of excessive force in seizing her.

57. Defendants' unlawful actions were done willfully, maliciously, and with the specific intent to deprive Plaintiff of her constitutional and statutory rights.

58. As a direct and proximate consequence of Defendants' actions, Plaintiff suffered a loss of her constitutional rights, physical injury and pain and suffering, and she is entitled to compensatory damages for the injury to her person and, as to the individual Defendants, all damages authorized by Civil Code §52.1, including punitive damages and attorney's fees as permitted by law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH CLAIM FOR RELIEF
## (ASSAULT)
## (AGAINST ALL DEFENDANTS)

59.   Plaintiff hereby incorporates by reference paragraphs 1 through 57 herein, as if set forth in full.

60.   In doing the acts described herein, Defendants intended to place Ms. Borawick in apprehension of an imminent offensive contact with her person.  As a result of Defendants' and each of their, intentional acts, Ms. Borawick was in fact placed in great apprehension of imminent harmful and offensive contact with her person.

61.   Defendants' conduct, as described above, caused Ms. Borawick to be apprehensive that Defendants would subject her to intentional invasions of her right to be free from offensive and harmful contact and demonstrated that at all times material herein, Defendants had a present ability to subject Ms. Borawick to an intentional offensive and harmful touching.

62.   Defendants' conduct was malicious and oppressive, and done with a conscious disregard of Ms. Borawick's rights.   Defendants had absolutely no justification to use any force against Ms. Borawick.  Defendants were informed that the handcuffing would cause her extreme pain and proceeded nonetheless to handcuff her behind her back.

63.   As a direct and proximate consequence of Defendants' actions, Plaintiff suffered physical injury and pain and suffering, and she is entitled to compensatory damages for the injury to her person.  She also suffered anxiety, worry, mental anguish, and emotional distress.  Defendants are responsible for all damages suffered by Ms. Borawick, including compensatory and punitive damages.

## SIXTH CLAIM FOR RELIEF

**(BATTERY)**
**(AGAINST ALL DEFENDANTS)**

64.   Plaintiff hereby incorporates by reference paragraphs 1 through 57 herein, as if set forth in full.

65.   In doing the acts described herein, Defendants intended to place Ms. Borawick in apprehension of an imminent offensive contact with her person and did in fact come into contact with Ms. Borawick's person without her consent when Defendants intentionally handcuffed Ms. Borawick in such a way as to cause her great pain.  As a result of Defendants' and each of their, intentional acts, Ms. Borawick was hurt physically and was placed in fear of her life.

66.   Defendants twisted Ms. Borawick's hands behind her back and left her handcuffed for approximately thirty minutes.  There was no justification for handcuffing Ms. Borawick.  Defendants then re-handcuffed Ms. Borawick for transport, again behind her back, without any justification whatsoever.

67.   Defendants' conduct was malicious and oppressive, and done with a conscious disregard of Ms. Borawick's rights.

68.   As a direct and proximate consequence of Defendants' actions, Plaintiff suffered physical injury and pain and suffering, and she is entitled to compensatory damages for the injury to her person.  She also suffered anxiety, worry, mental anguish, and emotional distress.  Defendants are responsible for all damages suffered by Ms. Borawick, including compensatory and punitive damages.

**SEVENTH CLAIM FOR RELIEF**
**(NEGLIGENCE)**
**(AGAINST ALL DEFENDANTS)**

69.   Plaintiff hereby incorporates by reference paragraphs 1 through 67 herein, as if set forth in full.

70.   Defendants were informed that Ms. Borawick had a disability that would make handcuffing her very painful for her.  Nonetheless, Defendants disregarded her statements and proceeded to handcuff her behind her back.

71. Ms. Borawick was entitled to a duty of care from the officers who

arrested her.  The officers had a duty not to use excessive force against her and to reasonably accommodate her disability.  The officers chose to detain Ms. Borawick and had a duty of care to those they detained.

72.  In doing the acts described herein, Defendants breached their duty of care to Ms. Borawick.  Defendants negligently subjected Ms. Borawick to injury, harm and damage when they chose to handcuff her behind her back for an extended period of time without any justification.

73.  As a direct and proximate consequence of Defendants' actions, Plaintiff suffered physical injury and pain and suffering, and she is entitled to compensatory damages for the injury to her person.  She also suffered anxiety, worry, mental anguish, and emotional distress.  Defendants are responsible for all damages suffered by Ms. Borawick, including compensatory and punitive damages.

**EIGHTH CLAIM FOR RELIEF**
**(NEGLIGENT EMPLOYMENT AND SUPERVISION)**
**(AGAINST DEFENDANT CITY OF LOS ANGELES)**

74.  Plaintiff hereby incorporates by reference paragraphs 1 through 67 herein, as if set forth in full.

75. In April 2016, Defendant CITY OF LOS ANGELES, by and through its employees in the Los Angeles Police Department, as supervisors of the individually named Defendants herein, knew or in the exercise of due care should have known, that the individually named Defendants had not been trained properly in accommodating detainees with limited mobility and disabling medical conditions.  Moreover, Defendant CITY OF LOS ANGELES knew or should have known that its officers had a custom, practice, or policy of failing to accommodate detainees who could not raise their arms or put them behind their back.  Moreover, Defendant CITY OF LOS ANGELES knew or should have known that its officers had a custom, practice, or policy of retaliating against citizens they perceived to have an "attitude problem" and failed to discipline officers who so acted or to

correct this custom, practice, or policy.

76.  On or about April 21, 2016, Ms. Borawick was entitled to a duty of care by the City of Los Angeles when she was stopped by defendant officers.

77.  In failing to train and supervise its officers, Defendant CITY OF LOS ANGELES breached its duty of care to Ms. Borawick and other detainees of the Los Angeles Police Department.  Its failure to train its officers in the appropriate procedures and to discipline officers who acted to retaliate against those perceived to have the "wrong attitude" subjected Ms. Borawick to injury, harm and damage when the Los Angeles Police Department officers ignored her statements that her arms could not be put behind her back and chose to handcuff her behind her back for an extended period of time without any justification.

78.  As a direct and proximate consequence of Defendant's actions, Plaintiff suffered physical injury and pain and suffering, and she is entitled to compensatory damages for the injury to her person.  She also suffered anxiety, worry, mental anguish, and emotional distress.  Defendant City of Los Angeles is responsible for all damages suffered by Ms. Borawick, including compensatory and punitive damages.


**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests relief as follows:

79.    The award of general and compensatory damages against all Defendants, jointly and severally, in an amount according to proof at trial;

80.    The award of punitive and exemplary damages against all Defendants sued in their individual capacities in an amount to be proven at trial;

81.    The award of any and all other damages allowed by law according to proof to be determined at time of trial in this matter;

82.    The award of costs of suit and reasonable attorneys' fees pursuant to 42 U.S. §1988, California Code of Civil Procedure §1021.5, and California Civil Code §52.1.

1

2    83.    The award of such other relief as the court deems just and proper.

3

4

5
     Dated: March 14, 2017          SCHONBRUN SEPLOW
6                                   HARRIS & HOFFMAN, LLP

7                                   By:_____

8
                                         Paul Hoffman
9                                        Catherine Sweetser

10                                       Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4              **DEMAND FOR JURY TRIAL**
5         Plaintiff hereby respectfully demands that a trial by jury be conducted with
6    respect to all issues presented herein.
7
8
9    Dated: March 14, 2017              SCHONBRUN SEPLOW
                                        HARRIS & HOFFMAN, LLP
10
11                                      By:_____
12                                         Paul Hoffman
                                           Catherine Sweetser
13
                                        Attorneys for Plaintiff
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28